STATE OF IOWA, Appellant, v. J. A. GUNN and R. J. BOAT-
MAN.

**Appeal by State:** REVIEW: *Rulings on evidence.* Where the objec-
tions to certain questions asked by the state in a criminal prosecu-
tion, on the ground that they were "incompetent, irrelevant, and
immaterial, privileged and hearsay," were sustained without stat-
ing the ground for the ruling, the question whether the objections
were properly sustained on the ground that the question called
for confidential communications will not be considered on an
appeal *by the state,* where the rulings of the court were mostly
sustainable on other grounds.

**Evidence.** In a prosecution of B. for committing an abortion by the
use of drugs and instruments, on a woman, causing her death, a
druggist testified for the defense that deceased came to his store
a short time before she was sick, with a prescription which she
stated a Dr. S. had given her, which witness had refused to fill.

2  Evidence was then given over objection that the drug prescribed would produce an abortion, and of other facts to show Dr. S. was the author of the prescription. *Held,* that the evidence was inadmissible, on account of its immateriality. The evidence was not admissible on the ground that it contradicted her dying declaration, that the abortion was produced by a doctor who was one of the defendants, since the fact that the deceased attempted it in the way described would not tend to prove that she would not afterwards permit it to be done by drugs and instruments in the hands of defendant, as charged in the indictment.

*Appeal from Mahaska District Court.*—HON. BEN McCOY, Judge.

TUESDAY, OCTOBER 4, 1898.

INDICTMENT for murder in the second degree. Verdict of acquittal, and the state appealed.—*Reversed.*

*Milton Remley,* Attorney General, and *Jesse A. Miller* for the State.

No appearance for appellee.

GRANGER, J.—The indictment charges the offense to have been committed upon one Irene Severt, a woman then pregnant, in an attempt to produce abortion by the use of drugs and instruments. The death occurred September 17, 1895. The following written statement was signed by her September 14, 1895:

"(1)  The man that seduced me was Mr. J. A. Gunn. (2) He was present when Dr. R. J. Boatman committed the abortion. The doctor used instruments four or five times. I also took four or five capsuls prior to the forceps or the instruments. (3) Mr. Gunn came to my room several times, and came into bed to me, and got me in the family way. (4) Mr. Gunn employed Dr. Boatman to produce the abortion. Irene Severt.

"The above was taken September the 14, 1895. Ira Barr. Josie Rankin."

"(Exhibit B.)"

The court admitted in evidence the following part of the statement, and rejected the balance: "He (Mr. J. A. Gunn) was present when Dr. R. J. Boatman committed the abortion. The doctor used instruments four or five times. I also took four capsules prior to the use of the forceps or instruments." The part of the statement excluded is as follows: "The man that seduced me was Mr. J. A. Gunn. Mr. Gunn came to my room several times, and came into bed to me, and got me in the family way. Mr. Gunn employed Dr. Boatman to produce the abortion."

It seems to have been the purpose, largely, in taking this appeal, to obtain a construction of section 3643, Code 1873, as to confidential communications between a physician and his patient. One Dr. Sigafoos was the attending physician before the death of Irene Severt, and wrote the statement that was signed by her. He was a witness for the state; and the complaints, in argument, on this branch of the case, are as to rulings of the court excluding questions to him as a witness. The following is appellant's statement, in argument, of the questions refused by the court, wherein the court is thought to be in error: "The doctor was asked in separate questions who suggested the making of the statement; whether the question of having a witness to the paper was discussed between them; whether Irene said when she made the statement that she wanted people to know its contents after she died; whether she objected to the calling of a certain witness; and whether or not, at the time the statement was made, she requested the doctor to get paper and write what she wanted to say, and she would sign it; whether he read Exhibit B to her, and whether she said it was all right or not, and true; whether, as a physician, he considered her in her right mind at the time the statement was made; whether there was anything in connection with the execution of Exhibit B or the conversation between them which was necessary for him to know in order to treat her case; whether it

was necessary for him to know, in order to treat her, who committed the abortion; whether, at any time prior to the making of the statement, she stated voluntarily to him that she wanted to make a statement; whether he asked her to make the statement; whether at the time the statement was made she wanted to make the statement, and stated that she wanted to make it before witnesses." It is said that the court sustained objections to each of these questions, on the ground that they called for confidential communications between a physician and his patient. The argument refers to a part of the record to show the fact. It seems to be a misapprehension. To all of the questions in that part of the record objected to, the grounds of objection are "incompetent, irrelevant, and immaterial, privileged and hearsay." The record does not disclose that a single ruling is based on the ground that the question calls for a confidential communication. The ground of the ruling is stated in but a single case, and then it is because the question calls for hearsay evidence. It may be said that, with slight exceptions, we think the rulings of the court sustainable on other grounds than the one argued. The case is before us on the state's appeal merely to settle the law; and, with no argument for appellees, we are not disposed to consider questions of grave importance that do not affirmatively arise on the record. It is to be remembered that the statement, as a dying declaration, was admitted in evidence, with the exceptions stated, so that the evidence in question was not to lay the foundation for the admission of the statement, but only as bearing on its credibility and weight as evidence; and it is on this theory that the case is argued. Before we can say that the court erred as to any of these questions, we must be prepared to hold that no one of the objections made to a particular question was good, and no complaint is made to justify such a conclusion. The case is not before us as it would be on an appeal by the defendants, when it would be our duty to examine the record, and protect the defendants from prejudice because of error. It seems

unnecessary to say more on this branch of the case. The law as to appeals by the state in such cases does not contemplate that we shall deal with imaginary questions; and it is to be said of the questions argued that they arise only upon a supposition that, of several grounds stated in support of our objection, the court based its ruling on the particular one argued.

II. Mr. Dale was a witness for the defense. He is a druggist, and was permitted to give evidence, against objections, that Irene Severt, before she was sick, a short time, came to his store with a prescription, saying that Dr. Sigafoos gave it to her. The following appears: "You may state what further she said to you at that time in relation to Dr. Sigafoos and the prescription. A. Why, she handed me the prescription and told me she wanted it filled. I took the prescription, and walked back of the case, and studied it about three minutes. I turned around, and said, 'Who wrote this?' She said, 'Dr. Sigafoos.' I said I couldn't fill it. She made a motion, and said, 'I guess Dr. Sigafoos knows his business.' I said, 'I guess I know mine; I can't fill it.' She kind of laughed, and walked out. That is the substance of it." It appears from the testimony of the witness that he declined to fill the prescription. This fact appeared quite early in his testimony. After it appeared that the prescription was not filled, so that it was apparent that the abortion was not attempted in that way,—that is, by the taking of that drug,—considerably other testimony, including what we have set out, was taken to show the nature of the drug; as, that it would produce abortion, what physicians were in Fremont, and other testimony tending to show that Dr. Sigafoos was the author of the prescription. It is urged that it was error to admit such testimony. Had Irene Severt at that time procured a drug of that nature, it would, of course, have been proper to have shown the fact as bearing on the probabilities of what produced the condition she was in before her death, an attempted abortion in some form being

the evident cause of her death.   But, with the conclusive statement that she did not get the drug we are not able to imagine a reason for the admission of the evidence on that subject that followed the statement, including what is above set out.   Among the objections to questions was that of their being immaterial, and we think such objections well taken. We cannot well argue the proposition, for we have no reasoning in support of the holding.   In the record, we find a statement of counsel for defendant, to the court, in favor of the admission of the evidence, that it was to contradict her dying declaration; but it does not have that effect.   The evidence would only prove that she desired and was attempting to produce abortion; and that she was so attempting was not in dispute.   That she attempted it in that way, and failed, would not tend to prove that she did not afterwards permit it to be done in the way charged in the indictment.   We need not consider the question whether or not such evidence would be proper if it did tend to contradict the dying declarations. The judgment of acquittal must stand, under the statute. The ruling by which the improper testimony was admitted, as suggested, must be REVERSED.